Western Dredging Company v. Commissioner.
Western Dredging Co. v. Commissioner
Docket No. 105842.
United States Tax Court
1942 Tax Ct. Memo LEXIS 87; 1 T.C.M. (CCH) 101; T.C.M. (RIA) 42601; November 19, 1942
*87 Tevis P. Martin, Esq., for the petitioner. Arthur L. Murray, Esq., for the respondent. ARNOLD Memorandum Opinion ARNOLD, J.: This proceeding involves a deficiency in income tax in the amount of $1,628.07 for the year 1938. The only question involved is whether the amount of $9,000 paid by petitioner in 1938 to the holder of its 6 percent preference debentures was interest and as such deductible from gross income under section 23 (b) of the Revenue Act of 1938. The return was filed with the collector of internal revenue for the first district of California. The facts were stipulated and, as stipulated, are adopted as our findings of fact. [The Facts] The petitioner was organized as a Nevada corporation on March 9, 1937, pursuant to an agreement dated March 1, 1935 between E. H. Heller, as first party, Sanford Lowengart, as second party, and Samuel Livingston, H. Bradley, F. Cushing Moore, and A. C. Ferguson, as third parties, to take over and operate certain gold bearing land in the State of Oregon. The contract provided, inter alia, that * * * any moneys advanced by first or second parties to the corporation, or prior to its incorporation, are at the option of first *88 and second parties to be considered as a loan by first and second parties to the said corporation, and for its benefit, and at their option first and second parties may take the notes of the said corporation for the amount of said advances, or may take a form of preferred stock to be agreed upon between them, the said preferred stock or notes, however, not to bear interest in excess of six per cent (6%). It is agreed further that the said notes are to be repaid or the said preferred stock is to be retired by payment before it shall become obligatory to pay dividends on any of the common stock. * * * On November 8, 1935, Heller withdrew from the enterprise. Stetlow Investment Company, hereinafter referred to as Stetlow, Lowengart and the third parties to the agreement of March 1, 1935, proceeded with the venture. It was agreed between Heller, Lowengart and Stetlow, that any monies thereafter advanced by Lowengart and/or Stetlow would have priority as to repayment over the monies theretofore advanced by Heller and Lowengart acting for himself and Stetlow, and that upon the formation of a corporation, such monies advanced by Lowengart and Stetlow, subsequent to the withdrawal of Heller, *89 should be evidenced by corporate notes or preference stock, which would be subject to repayment or redemption prior to the notes or preference stock representing monies advanced by Heller and Lowengart acting for himself and Stetlow before the withdrawal of Heller. At the time of the incorporation of petitioner certain amounts had been advanced for the acquisition, proving and developing of the mining properties constituting the John Day Mine, by persons as follows: Subse-
Prior to
Interest at
quent to
Interest at
withdrawal
6% per
withdrawal
6% per
of Heller
annum
of Heller
annum
Total
Heller
$34,000
$4,100
$ 38,100
Lowengart and Stetlow
17,000
2,200
19,200
Longengart
$24,040
$1,440
25,480
Stetlow
36,060
2,160
38,220
$51,000
$6,300
$60,100
$3,600
$121,000 In addition Albert A. Rosenshine had rendered legal services in connection with legal matters attendant to the acquisition and development of the properties and the formation of petitioner of the reasonable value of $5,000. A report dated January 15, 1936 by a mining engineer, based on tests conducted by him, stated that the properties contained gold deposits *90 that had a gross recovery value of $1,225,000. On March 9, 1937, the petitioner was organized and its articles of incorporation provide, inter alia, as follows: FOURTH: The amount of the total authorized capital stock of this corporation is $500,000.00, consisting of two thousand five hundred (2500) shares of 6% preference debentures of the par value of One Hundred ($100.00) Dollars per share, and twenty-five thousand (25,000) shares of common stock of the par value of Ten ( $10.-0) Dollars per share. * * * * *
A summary of the terms on which the common stock and the 6 percent preference debentures were created and the distinctions, powers, preferences, rights, qualifications, limitations or restrictions, applying to each, printed on the reverse side of the debenture certificates, are as follows: The corporation shall have authority to issue 25,000 shares of common stock of the par value of $10 each, amounting in the aggregate to $250,000; and 2500 6% preference debentures of the par value of $100 each, amounting in the aggregate to $250,000. The distinctions, powers, preferences, rights, qualifications, limitations or restrictions thereof are as follows: Before any dividends *91 are paid on the common stock, the 6% preference debentures shall be entitled to cumulative interest at the rate of 6% per annum from April 1, 1937, payable annually commencing April 1, 1938. In the event of the dissolution of the corporation or the distribution of its assets, the 6% preference debentures outstanding at that time shall first be paid at par with all cumulative unpaid interest, and all the corporate assets then remaining shall be divided ratably among the holders of the common stock. The voting power shall be confined exclusively to holders of the common stock. The corporation reserves the right to redeem on any interest date all or any number of the shares of the 6% preference debentures, at par with accumulated interest to the date of redemption. The corporation agrees to redeem annually, commencing April 1, 1939, 6% preference debentures of the aggregate par value of not less than $5,000. Such redemption, unless the same be incidental to liquidation, shall be made in the numerical order of the outstanding certificates. In the event of the issue of new certificates, upon surrender of original certificates, such new certificates shall, with respect to the right of *92 the holder thereof to have the same redeemed, take the place of the certificate or certificates originally issued. If the corporation shall become five years in arrears in the payment of interest on the 6% preference debentures or in the annual redemption hereinabove provided, the corporation shall be deemed in default, and the owners of all such 6% preference debentures then outstanding shall be entitled to declare the par value of their said 6% preference debentures to be due and payable, and to institute action against the corporation for the principal thereof and the accumulated interest thereon. The rights of the holders of 6% preference debentures are further limited in the following respect: In the payment of their several claims, all general creditors of the corporation shall rank superior to the holders of the 6% preference debentures, but all holders of 6% preference debentures shall rank pari passu with each other and superior to holders of the common stock of the corporation. A written offer made by Lowengart, acting for the group, on March 10, 1937, to transfer his rights and interests in and to certain real properties located in Grant County, Oregon, and certain *93 personal properties in consideration for the issuance to him and/or his nominees of 15,000 shares of common stock and 1,260 shares of the 6 percent preference debentures of petitioner, all to be issued as full paid up shares, was accepted by the petitioner. Pursuant thereto preference debentures and common stock were issued as follows: 6% Preference Debentures:
No. of
Par
Name
Shares
Value
Rosenshine
50
$ 5,000
Stetlow
498
49,800
Lowengart
331
33,100
Heller
381
38,100
Total
1,260
$126,000
Common Stock: Samuel Livingston
975
F. Cushing Moore
900
H. Bradley
525
A. C. Ferguson
600
Stetlow
7,200
Lowengart
4,800
Total
15,000
In addition the petitioner issued 96 and 144 of its 6 percent preference debentures to Lowengart and Stetlow, respectively. Each delivered to the petitioner in payment therefor a demand note in the amount of the par value of the debentures issued, which notes were subsequently paid. In the year 1938 the petitioner paid on its then outstanding preference debentures the sum of $9,000 as follows: Name
Amount
Stetlow
$3,852
Lowengart
2,563
Heller
2,286
Rosenshine
300
The Commissioner determined that the preference debentures *94 issued by petitioner are not evidences of indebtedness and that the amount of $9,000 paid thereon in 1938 is not deductible as interest under the provision of section 23 (b) of the Revenue Act of 1938. [Opinion] Whether or not the $9,000 paid by petitioner to its holders of preference debentures is "interest" deductible under section 23 (b) is not to be determined from the terms and conditions of the debentures alone, but also from a consideration of all the facts and circumstances surrounding the issuance thereof. If taken as a whole, the evidence shows a relation of debtor and creditor, the payment made, whatever called, will be interest, but if the evidence taken as a whole shows a stockholder relation the payment made, whether designated interest or dividend, will be a dividend. . The court points out that the most significant, if not the essential feature of a debtor and creditor relationship, is "the existence of a fixed maturity for the principal sum with the right to force payment of the sum as a debt in the event of default", which feature was lacking in that case but is present *95 herein. In , wherein the court held that "interest" paid on "debenture preference stock" was, upon all the evidence presented, interest on indebtedness, the court stated that the "real intention of the parties is to be sought and in order to establish it evidence aliunde the contract is admissible". It is our opinion that it was the intention of the parties herein that the holders of the preference debentures were to be considered as creditors of the corporation, whether the indebtedness was evidenced by "notes" or a "form of preferred stock". The payments on the preference debentures herein were not restricted to the corporate earnings and profits. Cf. ; , affirming ; and Commissioner v. Meridian & Thirteenth Realty Co., 132 Fed. (2d) 18b# In the last two cases the certificates involved were designated preferred stock and the payments made thereon were called *96 dividends and treated as such and were payable out of the earnings and profits of the business. In the Pacific Southwest Realty Co. case if the dividend remained unpaid for ninety days voting power was vested in the holders exclusively and they could compel the declaration and payment of the dividend or the liquidation of the corporation. In the Meridian & Thirteenth Realty Co. case the holders of the preferred stock had only the right to require liquidation of the company for failure to comply with its obligations and agreements. Furthermore the evidence in both cases disclosed an intent at the outset to issue preferred stock rather than to create a creditordebtor relationship. The situation before us is entirely different from that existing in the above cases. Herein the evidence shows an intent to create a relationship of debtor and creditor. Herein the holders of the preference debentures could at no time control the corporation as stockholders, as the voting power was confined exclusively to holders of the common stock. Herein, too, the holders of the preference debentures had the right to compel payment of principal and interest in the event of default by instituting *97 an action against the petitioner for money due. Stockholders have no such right. That the debentures are subordinate to claims of general creditors is not fatal to the status of the holders thereof as creditors. It was so held in , affirming , wherein "debenture bonds" were subordinate to the claims of general creditors, the court stating that the final criterion between creditors and shareholders was the contingency of payment, the stockholder being entitled to nothing, prior to liquidation, except out of earnings. Herein the payments were referred to at all times as interest, the debentures were payable commencing April 1, 1939, in the commercial order of the outstanding certificates in the aggregate par value of at least $5,000; the holders, in the event of default, had the right to commence suit for the recovery of principal and interest, in the event of dissolution the holders of the debentures were entitled to payment of principal with all cumulative unpaid interest and, although their claims were subordinate to the claims of general creditors, they *98 would rank pari passu with each other and superior to holders of the common stock. Under those circumstances it is our conclusion and we find that the $9,000 paid by petitioner in 1938 to the holders of its preference debentures was interest and, as such, is deductible from gross income under section 23 (b). See also ; ; ; The respondent in particular directs attention to the offer of Lowengart, pursuant to which various assets accumulated by the individuals interested in the venture were transferred to the petitioner for its common stock and 6 percent preference debentures. He claims that the various cash and other valuable properties were not segregated in any way so that it can not be determined that any of such property was paid in to the petitioner as a loan and hence it was impossible to determine that the preference debentures were issued for *99 any specific items of property different in character from similar items contributed for common stock. The amounts advanced by the various parties interested in the enterprise prior to the incorporation of the petitioner were stipulated and aggregated $121,000. It was also stipulated that Rosenshine had rendered legal services of the reasonable value of $5,000. The par value of debentures issued to Rosenshine, Stetlow, Lowengart and Heller, except those paid for by Stetlow and Lowengart by notes which were afterwards paid, amounted to $126,000. This was the amount due for money advanced plus interest, including the reasonable value of the legal services of Rosenshine. From the facts, as stipulated, the only conclusion that can be drawn therefrom is that the debentures were issued as evidence of an indebtedness from petitioner to the holders of such debentures and the amount of $9,000 paid thereon in 1938 is deductible as interest paid on indebtedness under section 23 (b) of the Revenue Act of 1938. The respondent in recomputing petitioner's tax liability for 1938 made three additional adjustments which are not in controversy. Therefore, Decision will be entered under Rule 50. *100